# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **Case No.: 21-CR-259 (TSC)** |
| **v.** | : | **18 U.S.C. § 111(a)(1) and (b)** |
| **MARK K. PONDER,** | : | |
| **Defendant.** | : | |

## STATEMENT OF OFFENSE

Pursuant to Fed. R. Crim. P. 11, the United States of America, by and through its attorney, the United States Attorney for the District of Columbia, and the defendant, MARK K. PONDER, with the concurrence of his attorney, agree and stipulate to the below factual basis for the defendant's guilty plea—that is, if this case were to proceed to trial, the parties stipulate that the United States could prove the below facts beyond a reasonable doubt:

### *The Attack at the U.S. Capitol on January 6, 2021*

1. The U.S. Capitol, which is located at First Street, SE, in Washington, D.C., is secured twenty-four hours a day by U.S. Capitol Police (USCP). Restrictions around the Capitol include permanent and temporary security barriers and posts manned by USCP. Only authorized people with appropriate identification are allowed access inside the Capitol.

2. On January 6, 2021, the exterior plaza of the Capitol was closed to members of the public.

3. On January 6, 2021, a joint session of the United States Congress convened at the Capitol, which is located at First Street, SE, in Washington, D.C. During the joint session, elected members of the United States House of Representatives and the United States Senate were meeting in separate chambers of the Capitol to certify the vote count of the Electoral College of the 2020

Presidential Election, which had taken place on Tuesday, November 3, 2020. The joint session began at approximately 1:00 PM. Shortly thereafter, by approximately 1:30 PM, the House and Senate adjourned to separate chambers to resolve a particular objection. Vice President Mike Pence was present and presiding, first in the joint session, and then in the Senate chamber.

4. As the proceedings continued in both the House and the Senate, and with Vice President Pence present and presiding over the Senate, a large crowd gathered outside the Capitol. Temporary and permanent barricades, as noted above, were in place around the exterior of the Capitol, and USCP officers were present and attempting to keep the crowd away from the Capitol and the proceedings underway inside.

5. At approximately 2:00 PM, certain individuals in the crowd forced their way through, up, and over the barricades. Officers of the USCP were forced to retreat and the crowd advanced to the exterior façade of the building. The crowd was not lawfully authorized to enter or remain in the building and, prior to entering the building, no members of the crowd submitted to security screenings or weapons checks as required by USCP officers or other authorized security officials.

6. At such time, the certification proceedings were still underway, and the exterior doors and windows of the Capitol were locked or otherwise secured. Members of the USCP attempted to maintain order and keep the crowd from entering the Capitol; however, shortly after 2:00 PM, individuals in the crowd forced entry into the Capitol, including by breaking windows and by assaulting members of law enforcement, as others in the crowd encouraged and assisted those acts. The riot resulted in substantial damage to the Capitol, requiring the expenditure of more than $1.4 million dollars for repairs.

7. Shortly thereafter, at approximately 2:20 PM, members of the House of Representatives and of the Senate, including the President of the Senate, Vice President Pence, were instructed to—and did—evacuate the chambers. Accordingly, all proceedings of the United States Congress, including the joint session, were effectively suspended until shortly after 8:00 PM on January 6, 2021. In light of the dangerous circumstances caused by the unlawful entry to the Capitol—including the danger posed by individuals who had entered the Capitol without any security screening or weapons check—Congressional proceedings could not resume until after every unauthorized occupant had been removed from or left the Capitol, and USCP confirmed that the building was secured. The proceedings resumed at approximately 8:00 PM after the building had been secured. Vice President Pence remained in the Capitol from the time he was evacuated from the Senate Chamber until the session resumed.

### *Mark K. Ponder's Participation in the January 6, 2021, Capitol Riot*

8. The defendant, Mark K. Ponder, lives in Washington, D.C. On January 6, 2021, defendant traveled downtown to protest Congress' certification of the Electoral College.

9. On January 6, defendant assaulted three police officers in the western portion of the U.S. Capitol Grounds. This occurred in the Capitol's West Plaza and its Upper West Terrace.

10. The western portion of the capitol faces the Washington Monument. It has a ground-level plaza (the West Plaza), a "lower" terrace elevated about one story above ground level (the Lower West Terrace), and an "upper" terrace elevated about two stories above ground level (the Upper West Terrace). A person standing in the West Plaza can reach the Lower, and then Upper, West Terraces by climbing exterior staircases on the Capitol Building's west side.

11. At about 2:30 p.m., rioters overwhelmed police lines in the West Plaza, causing law enforcement officers to regroup and retreat to the Lower West Terrace. Two of the defendant's

assaults occurred after rioters broke the police lines but before the police officers had fully retreated.

12. At approximately 2:31 p.m., the defendant ran out from a crowd in the West Plaza and swung a long, thin pole at a U.S. Capitol Police officer. That officer protected himself by raising his riot shield above his head. The defendant's pole struck the riot shield and broke in two, with part of the pole flying off to the side. The defendant retreated into the crowd.

13. Moments later, the defendant re-armed himself with a new, thicker pole colored with red, white, and blue stripes. At approximately 2:32 p.m., the defendant ran toward a second U.S. Capitol Police officer who—again—blocked the pole with his riot shield. The defendant retreated into the crowd a second time.

14. At approximately 2:48 p.m., the defendant joined a crowd of rioters that faced off against a line of officers with the Metropolitan Police Department in the Upper West Terrace. The defendant, who still had the same thick pole with stripes, swung the pole and banged it against the ground in a menacing manner. Then, as the police officers advanced to move the crowd, the defendant wildly swung the pole at the advancing police line, striking officer J.C. in the left shoulder.

15. After the defendant struck J.C., officers with the Metropolitan Police Department took him to the ground and handcuffed him. The defendant was held for arrest, but due to the chaotic nature of the day, officers were unable to complete the arrest and ultimately released the defendant at approximately 3:15 p.m. As the defendant was being detained, he shouted, "Hold the line!" and "Do not give up!" at fellow rioters. He also told officers detaining him that "When our country is being attacked with, like we are, we have a right to fight . . . that is what the Second Amendment was built on."

16. When the defendant was released on the afternoon of January 6th, he was specifically instructed not to return to the Capitol. Despite those instructions, the defendant was in the Lower West Terrace again at approximately 5:06 p.m., engaging with officers who were trying to clear the area of rioters.

17. On March 17, 2021, the defendant was arrested. Following his arrest, the defendant was interviewed by agents of the Federal Bureau of Investigation (FBI). The defendant admitted to striking at least one officer with the red, white, and blue pole, though he told agents that he could not remember whether he had struck more than one. The defendant claimed that the assaults were not "personal" because he generally "stands with" officers, but further claimed that his actions were justified because the officers were a "part of the problem" that day, telling agents that "the way this country is going, you [the officers] gonna have to pick a side."

### *Elements of the Offense*

18. Mark K. Ponder knowingly and voluntarily admits to all the elements of 18 U.S.C. § 111(a)(1) and (b). Specifically, defendant admits that he defendant forcibly assaulted, resisted, opposed, impeded, intimidated, or interfered with any person designated in 18 U.S.C. § 1114 while engaged in or on account of the performance of their official duties. Specifically, the defendant admits that he hit a United States Capitol Police officer who was tasked with protecting the Capitol building and grounds on that date. The defendant further admits that he knew at that time of the assault of the officer that the officer was engaged in the performance of his official duties or that he assaulted the officer on account of their performance of his official duties.

Respectfully submitted,

MATTHEW M. GRAVES
United States Attorney
D.C. Bar No. 481052

By:     */s/ Jocelyn Bond*
Jocelyn P. Bond
Assistant United States Attorney
D.C. Bar No. 1008904

*/s/ Michael Romano*
Michael J. Romano
Assistant United States Attorney
IL Bar No. 6293658

## DEFENDANT'S ACKNOWLEDGMENT

I, Mark K. Ponder, have read this Statement of the Offense and have discussed it with my attorney. I fully understand this Statement of the Offense. I agree and acknowledge by my signature that this Statement of the Offense is true and accurate. I do this voluntarily and of my own free will. No threats have been made to me nor am I under the influence of anything that could impede my ability to understand this Statement of the Offense fully.

Date: 4/18/22

Mark K. Ponder
Defendant

## ATTORNEY'S ACKNOWLEDGMENT

I have read this Statement of the Offense and have reviewed it with my client fully. I concur in my client's desire to adopt this Statement of the Offense as true and accurate.

Date: 04/18/2022

Joseph R. Conte
Attorney for Defendant